

RECEIVED

BY _____

SEP 1 8 2009

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNION PUMP CO. | CIVIL ACTION NO: 05-0287 |
| VERSUS | JUDGE DONALD E. WALTER |
| CENTRIFUGAL TECHNOLOGY INC., DANIEL CLEVELAND, JERRY DON ELMORE, CHARLES GOODRICH, & SCOTTSDALE INSURANCE CO. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Trial in the above captioned matter was held May 20, 2009 through June 4, 2009. Upon the conclusion of Plaintiff's case, Scottsdale Insurance Co. ("Scottsdale"), moved for a dismissal of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 50. *See* Doc. #453. On May 29, 2009, the Court **GRANTED** Scottsdale's Rule 50 motion for the reasons assigned herein.

### Background Information

The relevant facts are well known to all parties involved. Plaintiff filed suit against the Defendants, Centrifugal Technology, Inc. ("CTI"), Daniel Cleveland, Jerry Don Elmore, and Charles Goodrich. Plaintiff asserted the following claims against Defendants: (a) violation of the Louisiana Unfair Trade Practices Act, (b) violation of the Louisiana Unfair Trade Secrets Act, (c) spoliation, (d) conversion, and (e) negligence.

Plaintiff also filed a direct action suit against Scottsdale as the Defendants' insurer. Scottsdale moved the Court to dismiss it from the lawsuit at the conclusion of Plaintiff's case in chief, arguing that Plaintiff failed to present evidence sufficient to find that coverage exists under the policy for the claims asserted against the Defendants.

## Law and Analysis

### I. Rule 50 Standard

Federal Rule of Civil Procedure 50(a) states: "If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (a) resolve the issue against the party; and (b) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. When entertaining a Rule 50 motion, the Court "must review all of the evidence in the record, draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh the evidence." *Ellis v. Weasler Engineering, Inc.*, 258 F.3d 326, 337 (5th Cir. 2001)(internal citations omitted).

### II. Coverage under the Insurance Policy

Scottsdale issued a Commercial General Liability Policy on behalf of CTI. *See* Doc. #257-4, Ex. C (herein "policy"). The policy contains three types of coverage: (1) Bodily Injury and Property Damage Liability (Coverage A); (2) Personal and Advertising Injury Liability (Coverage B); and (3) Medical Payments (Coverage C).[1]

The interpretation of the policy is subject to Louisiana law because the policy was issued within the state. *American International Specialty Lines Insurance Co.*, 352 F.3d 254, 260 (5th Cir. 2003). The interpretation of an insurance contract requires a determination of the common intent of the parties. *See* La. Civ. Code art. 2045; *Doerr v. Mobil Oil Corp.*, 774 So.2d 119, 124 (La. 2000). The Court should initially determine the intent by looking at the policy itself. "When the

---

[1] Coverage C is not applicable to the facts of this case.

2

words are clear and explicit and lead to no absurd consequences, nor further interpretation may be made in search of the parties' intent." La Civ. Code art. 2046. Under Louisiana law, words and phrases of an insurance contract must be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. *Sonnier v. State Farm Mutual Auto Ins. Co.*, 509 F.3d 673 (5th Cir. 2007). It is the insured's burden to prove that the incident giving rise to the claim falls within the policy's terms. *See Doerr v. Mobil Oil Corp.*, 774 So.2d 119, 124 (La. 2000). However, the insurer bears the burden of proving the applicability of an exclusionary clause within the contract. *Id.*

A. <u>Coverage A - Bodily Injury and Property Damage Liability</u>

Coverage A provides that Scottsdale will pay sums that the insured becomes legally obligated to pay because of "bodily injury" and "property damage" as those terms are defined under the policy. *See* Policy at 37. Only property damage is alleged to have occurred in this case. "Property damage" is defined as:

(a) Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

(b) Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property. As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications, software, hard or floppy discs, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

*See* Policy at 39.

3

At the outset, the Court notes that a majority of the property alleged to have been damaged by Defendants fails to meet the definition of "tangible property" as defined by the policy. The Louisiana Supreme Court has equated "tangible property" with "corporeal property." *Dietrich v. Travelers Ins. Co.*, 551 So.2d 64, 66 (La. App. 1st Cir. 1989); citing *City of New Orleans v. Baumer Foods, Inc.*, 532 So.2d 1381 (La. 1988). "Corporeal property" are things that "have a body, whether animate or inanimate and can be felt or touched." La. Civ. Code art. 461.

Plaintiff's claims center around the unauthorized and wrongful use, and ultimately, the destruction of its design drawings, autocad drawings, and pump models. The policy itself specifically excludes electronic data, which would encompass all electronic copies of the design and autocad drawings. Further, Plaintiff's claims for damages caused by an infringement of trade secrets would not be covered under the policy. Trade secrets are not consistent with "tangible property" because they are incorporeal and have no body La. Civ. Code art. 461. Plaintiff has alleged that Defendants destroyed and/or wrongfully possessed actual physical models of pumps and hard copies of their drawings. These would qualify as tangible property.

Coverage A only applies to property damage if it is caused by an "occurrence," which is defined under the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See* Policy at 25, 38. The policy does not define the term "accident." However, the Fifth Circuit has considered a policy containing almost identical language and had noted that the term "accident" is defined by Black's Law Dictionary as "a fortuitous circumstance, event, or happening; an event happening without any human agency, or if happening wholly or partly through human agency, an event under which the circumstance is unusual and unexpected by the person to whom it happens." *Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d

4

659, 678 (5th Cir. 2000).

Coverage under the policy for property damage is limited further by an intentional act exclusion. Specifically, the policy states: "This insurance does not apply to [] property damage expected or intended from the standpoint of the insured." *See* Policy at 26.

Scottsdale argues that none of the alleged acts by Defendants meet the definition of an "occurrence" because the acts were not accidental. Further, Scottsdale argues that all of the alleged acts were intentional, and thus subject to the "intentional act exclusion." The Court will now analyze Plaintiff's claims in light of the policy provisions.

1.   Louisiana Unfair Trade Practices Act ("LUTPA")

The Louisiana Unfair Trade Practices Act provides a private cause of action by a person who has experienced a loss from deceptive or unfair trade practices, including unfair competition. *See* La. R.S. 51:1401 *et seq.* "A practice is unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious." *Levine v. First National Bank*, 948 So.2d 1051, 1065-66 (La. 2006). Thus, to prove a LUTPA claim, Plaintiff must "prove some element of fraud, misrepresentation, deception, or other unethical conduct." *Omnitech Intern, Inc. v. Clorox, Co.*, 11 F.3d 1316, 1332 (5th Cir. 1994).

Acts such as fraud, misrepresentation, and deception are of the type that would not be accidental, an thus do not constitute an occurrence. Further, these acts are committed with the intent to harm or do damage, which would preclude coverage under the intentional act exclusion. Accordingly, Scottsdale is not obliged to pay a claim resulting from Defendants' liability for violations of the Louisiana Unfair Trade Practices Act.

### 2. Louisiana Uniform Trade Secrets Act

A similar analysis is applicable to Plaintiff's claim for damages under the Louisiana Uniform Trade Secrets Act. To prevail, Plaintiff must prove (1) the existence of a trade secret, (b) a misappropriation of the trade secret by another, and (c) actual loss caused by the misappropriation. *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 648 (5th Cir. 1997). Misappropriation means the acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means by a person who either (a) used improper means to acquire knowledge of the secret, or (b) knew at the time of its disclosure that his knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy. *See* La. Rev. Stat. §51:1431. "Improper means" includes theft, bribery, misrepresentation, breach, inducement of breach of a duty to maintain secrecy, or espionage through electronic or other means. *Id.*

Misappropriation requires an affirmative act and would not be a fortuitous act consistent with an accident to support an "occurrence." Further, when such acts of misappropriation are committed they are intended or expected to cause damage to another, and are thus excluded. Accordingly, Scottsdale is not obligated to pay a claim resulting from Defendants' liability under the Louisiana Uniform Trade Secrets Act.

### 3. Conversion

Plaintiff claims that Defendants converted its property either intentionally or negligently, by possessing their property without authorization. Under Louisiana law, conversion is committed when any of the following occurs: (1) possession is acquired in an unauthorized manner; (2) the chattel is removed from one place to another with the intent to exercise control over it; (3) possession of the chattel is transferred without authority; (4) possession is withheld from the owner

or possessor; (5) the chattel is altered or destroyed; (6) the chattel is used improperly; or (7) ownership is asserted over the chattel. *Richard v. Wal-mart Stores, Inc.*, 559 F.3d 341, 345 (5th Cir. 2009); citing *Dual Drilling Co. v. Mills Equip. Inv., Inc.*, 721 So.2d 853, 857 (La.1998).

If the Defendants intentionally converted Plaintiff's property, such an act would be excluded from coverage under the intentional act exclusion. Plaintiff also asserts that Defendants committed acts consistent with negligent conversion. Scottsdale argues that there is no such tort as negligent conversion under Louisiana law. However, there is a Fifth Circuit case which recognizes negligent conversion as a valid tort, which this Court must follow. *See Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659 (5th Cir. 2000). In *Adams* the Fifth Circuit affirmed the District Court's finding that a salvor was liable for negligent conversion of sunken cargo for the extent it interfered with the insurer's right to sell the recovered cargo. *Id.*

In this case, the allegations are that the Defendants intentionally and/or negligently possessed and/or used the Plaintiff's property to their benefit. Again, any intentional acts would exclude coverage. While there is a claim for negligent conversion, the evidence presented by Plaintiff is legally insufficient for a reasonable jury to find for the Plaintiff on this issue. Plaintiff presented evidence that certain drawings and/or pump models were left in the possession of Defendants when Plaintiff closed its Shreveport plant. The evidence indicated that Plaintiff did not perform an inventory to determine whether it was missing any of its models or drawings. Plaintiff's own negligent actions of leaving its property in the hands of the Defendants cannot support a finding that Defendants committed negligent conversion.

To prove a conversion based on wrongful possession of these items Plaintiff must prove that a demand was made to Defendants for the return of its property, and that the Defendants refused.

*See Louisiana State Bar Association v. Hinrichs*, 486 So.2d 116, 121 (La. 1986). Of course, if a demand was made and Defendants refused to return Plaintiff's property, the refusal would be an intentional act.

4.  Spoliation

Plaintiff alleges that Defendants engaged in intentional and/or negligent spoliation of evidence, which constitutes a tort in Louisiana. Scottsdale argues that spoliation is merely an evidentiary presumption, not a separate cause of action. However, even if the Court were to find spoliation a valid tort in Louisiana, Scottsdale asserts that the Louisiana Supreme Court has not recognized a tort for negligent spoliation of the evidence. Intentional spoliation would not qualify as an occurrence and would be precluded from coverage under the intentional act exclusion.

There are numerous Louisiana Circuit Court cases which discuss the concept of spoliation and provide the elements necessary to recover under such a claim. However, the Louisiana Supreme Court has not addressed the issue. If the Louisiana Supreme has not ruled on an issue, federal courts must make an *Erie* guess to determine as best as it can what that court would decide. *Hodges v. Mosaic Fertilizers, LLC*, 289 Fed. Appx. 4, 7 (5th Cir. 2008)(internal citations omitted).

All five Louisiana Circuit Courts of Appeal have recognized spoliation as a valid tort claim. *See Rudolph v. General Motors Corp*, 646 So.2d 1019 (La. App. 1st Cir. 1994), *writ denied*; *Carter v. Exide Corp.*, 661 So.2d 698 (La. App. 2d Cir. 1995); *Bethea v. Modern Biomedical Services, Inc.*, 704 So.2d 1227 (La. App. 3d Cir. 1997); *Williams v. General Motors Corp.*, 607 So.2d 695 (La. App. 4th Cir. 1992), *writ denied*; *Pham v. Continco International, Inc.*, 759 So.2d 880 (La. App. 5th Cir. 2000). Accordingly, it is this Court's *Erie* guess that the Louisiana Supreme Court would find spoliation of the evidence to be a valid tort claim.

The Louisiana Circuit Courts are split as to whether the act of spoliation must be intentional. Two Louisiana Circuit Courts have held that a plaintiff asserting a claim for spoliation of the evidence must allege that the defendant intentionally destroyed the evidence, and that allegations of negligent conduct are insufficient. *See Pham v. Continco International, Inc.*, 759 So.2d 880 (La. App. 5th Cir. 2000); *Randolph v. General Motors Corp.*, 646 So.2d 1019 (La. App. 1st Cir. 1994). However, other Circuit Courts have held that negligent conduct may be sufficient. For example, the Second Circuit has held that in an employer/employee situation an employer may be liable for negligently failing to preserve evidence in certain circumstances if such a duty existed. *See Carter v. Exide Corp.*, 661 So.2d 698 (La. App. 2d Cir. 1995). The Louisiana Third Circuit has indirectly recognized a claim for negligent spoliation by comparing the tort of spoliation to the tort of impairment of a civil action. *Guillory v. Dillard's Dept. Store, Inc.*, 777 So.2d 1 (La. App. 3d Cir. 2000).

The tort of spoliation of the evidence is derived from the evidentiary theory of adverse presumption. *Id.* at 3-4. In the evidentiary context, the concept of spoliation of the evidence is defined as an intentional destruction of the evidence for the purpose of depriving an opposing party of its use. *Pham*, 759 So. 2d at 882. As stated *supra*, the Louisiana Supreme Court has not addressed the tort of spoliation of the evidence, or whether such acts must be intentional or merely negligent. Because the tort of spoliation is founded on principles requiring the intentional destruction of evidence to create an adverse evidentiary inference, it would be inconsistent to require intentional conduct for one, but not the other. It is this Court's *Erie* guess that the Louisiana Supreme Court would only recognize the tort of spoliation based on the intentional destruction of the evidence.

Intentional spoliation requires a showing by a plaintiff that evidence was destroyed with the intent to deprive another party of its use at trial. Such intentional acts would not be accidental to meet the definition of an occurrence under the policy. Further, such an act would preclude Scottsdale's obligation to provide coverage under the intentional act exclusion.

e. Negligence

Plaintiff inserted a claim for negligence in their Supplemental and Amended Complaint dated January 28, 2008. *See* Doc. #90. Plaintiff alleged that the facts and claims set forth constituted negligence or "acts causing damages" as defined in Louisiana Civil Code Article sections 2315 and 2316. *Id.* Scottsdale argues that there is no basis for a conclusion that there can be a negligence claim for deceptive trade practices, misappropriation of trade secrets, conversion, or spoliation. Further, Scottsdale argues that the mere insertion of the word "negligence" in a complaint is insufficient to change the essential nature of the claims asserted.

As noted *supra*, the Court has found that each and every act alleged by Plaintiff requires some set of circumstances that prevent the claim from being covered as an "occurrence" and that the acts also require intentional conduct, sufficient to exclude the claims from coverage. However, the Court reserved ruling on Scottsdale's Motion for Summary Judgment regarding a lack of coverage due to Plaintiff's claim for negligence, finding that material issues of fact remained. During the Plaintiff's case in chief the Court listened intently for any and all potential evidence that could support a claim for negligence. It is the finding of the Court that insufficient evidence was presented to allow a reasonable jury to have a sufficient evidentiary basis to find for Plaintiff on this issue.

B. <u>Coverage B - Personal and Advertising Injury</u>

Coverage B provides that Scottsdale will pay for damages that the insured becomes legally

10

obligated to pay as a result of "personal and advertising injury." *See* Policy at 29. The insurance applies to injuries arising out of the insured's business. *See* Policy at 30. The term "personal and advertising injury" as defined by the policy includes an injury caused by "infringing upon another's copyright, trade dress or slogan in your advertisement." *See* Policy at 38. An "advertisement" is defined as "a notice that is broadcast or published to the general public or specific market segments about your goods, products, or services for the purpose of attracting customers or supporters." *See* Policy at 36. The policy also contains an exclusion relevant to Plaintiff's claims. The policy specifically excludes injuries caused by the insured with knowledge that the act would violate the rights of another and would inflict a "personal and advertising injury." *See* Policy at 30.

The Court notes that no evidence was presented during the course of the trial that Defendants directly engaged in any act that would be consistent with advertisement. The only evidence of activity that resembles advertisement is a letter drafted by West Texas Pump that stated that a certain Union Pump design was available through Defendants' company. However, an advertisement by West Texas Pump is not sufficient to obligate Scottsdale to pay for damages caused by the advertisement. Scottsdale is only liable for damages that Defendants are obligated to pay due to an advertising injury. No evidence was presented that Defendants were involved in the decision by West Texas Pump to mail the letter in question.

More importantly, even if the Defendants had engaged in advertisement, such advertisement would fall within the exclusion contained in the policy. Plaintiff claims that Defendants used their protected trademark, designs, and drawings in their labels and advertising. However, Plaintiff's complaint also asserts that Defendants were aware that such information rightly belonged to the Plaintiff. If the Defendants knowingly used Plaintiff's protected information in its advertisement,

11

then coverage would be excluded under the terms of the policy.

## **Conclusion**

For the foregoing reasons, Scottsdale's Rule 50 motion for dismissal of Plaintiff's claims was **GRANTED** on May 29, 2009.

**THUS DONE AND SIGNED**, this **18** day of September, 2009.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE